INEZ V. RIDENOUR, Guardian, Appellant, v. I. M. JAMISON et al., Executors, Appellees.

No. 41979.

MAY 15, 1934.

J. A. Hanley and Glenn D. Kelly, for appellant.

Nichols, Tipton & Tipton, E. O. Newell, and Arthur Springer, for appellees.

ANDERSON, J.—This is an action in equity to rescind a contract involving the purchase of certain real estate in Louisa county, Iowa, and to recover back a part of the purchase price. On August 31, 1930, one C. S. Ridenour was committed to one of the state institutions as an insane person. In September of the same year his wife, Inez V. Ridenour, was appointed his guardian, and soon thereafter brought the present suit alleging that her ward had been of unsound mind and incapable of transacting business since about the year 1914, and that in March, 1919, the defendants Jamison, Cutkomp, Elizabeth F. Robertson, Robert Brooke, and Thomas Robertson, deceased, conspired to induce the said C. S. Ridenour to pur-

chase from the defendants Cutkomp and Elizabeth F. Robertson a certain farm of about 206 acres situated in Louisa county, Iowa, at and for a price greatly in excess of its real value, and thereby defrauded the said C. S. Ridenour out of the sum of $17,000. Plaintiff claims that the said Ridenour was of unsound mind at the time of the transaction and incapable of transacting business, and that he was induced and persuaded by the joint acts of the named defendants to enter into a contract for the purchase of the farm in question. The farm was sold by the title holders, Fred H. Cutkomp and Elizabeth Robertson, to Ridenour for the sum of $65,000, and plaintiff claims that such price was $20,000 in excess of the real and actual value of the land at the time of the transaction. Answers were filed by all of the defendants denying the claims made by plaintiff in her petition, and there was a trial to the court upon the issues thus joined resulting in a decree dismissing plaintiff's petition. The plaintiff has appealed.

The record submitted to us covers more than 700 pages of printed matter, but, from a careful reading of the same, we have obtained the following facts which are pertinent to a determination of the matter here.

C. S. Ridenour was a prosperous, thrifty, hard-working farmer, occupying his own farm in Cedar county, Iowa. His first experience in the real estate game was a visit to Texas, at which time he invested and lost some $500. This seemed to have worried him considerably, but it did not entirely dampen his ardor and ambition to enter into the wild orgy, as many others did, of investing and dealing in farm lands during the years from 1917 to 1920, when the selling prices of farm lands were increasing by leaps and bounds. In 1917 he purchased a farm of 243 acres for $53,460, and later sold the same for $58,000. In 1918 he sold out the personal property on his Cedar county farm, realizing $17,000 from such sale. He then rented his farm and moved to West Liberty in Muscatine county. He then purchased another farm for $18,500, and in the same year sold it at a profit. During the same year, 1919, he purchased another farm of 285 acres for $54,862, and in the same year sold it at a profit of $3,563. In June, 1919, he sold his home farm of 170 acres to his brother, J. L. Ridenour, for $37,400. On July 3d of the same year he bought another farm, and on July 19th following he sold the same at a profit of $5,400. In the same month, July, 1919, he purchased another farm of 100 acres for $47,500, and on January

30, 1920, sold the same at a profit of $3,500. During the same period he made many other real estate deals in some of which he made small profits and in others lost small amounts. He also purchased a home and later conveyed the same to his wife. He also, during the year 1919, took out large policies of life insurance.

The one deal or transaction of which plaintiff complains and which is involved in the present action is the purchase of the 206 acres of land on July 22, 1919, which we have heretofore mentioned. In this deal Ridenour contracted to pay $65,000 for 206 acres of land; $30,000 to be in cash, and $35,000 to be represented by a mortgage upon the land. The $30,000 was paid in cash, but Ridenour, prior to the time of closing the transaction, resold the land in question to one Schneider, at a profit of approximately $1,500, receiving $13,000 in cash and a second mortgage for $18,500. The conveyance to Schneider was made direct by the title holders, Cutkomp and Robertson, and Schneider executed to Cutkomp and Robertson the $35,000 mortgage provided for in the deal between Ridenour and the title holders. Schneider in turn sold the land to one Carson. The date of this transaction and the consideration therefor are not indicated in the record. One year's interest upon the second mortgage of $18,500 was paid to Ridenour. Later foreclosure of the $35,000 mortgage was commenced, and, either through foreclosure sale or by conveyance from Carson, the original owners, Cutkomp and Robertson, again became vested with the title. We probably should here mention the fact that, three or four months before Ridenour purchased this land, Cutkomp and Robertson had purchased it for $45,000, and that, in making the deal with Ridenour, they made a paper profit of $20,000, less commissions and expenses. The result of the transaction by which Ridenour purchased this land and resold it was that Ridenour finally lost approximately $17,000 represented by the second mortgage which he accepted as a part of the purchase price when he resold the land to Schneider. There is nothing in this transaction which differentiates it from thousands of other like transactions occurring during the years when land prices became wildly and unreasonably inflated. There is no evidence in the record from which a conspiracy to defraud can be inferred. There is no proof of any concerted action on the part of the defendants to induce Ridenour to enter into the contract or transaction in question. In fact, there is no proof of any fraud or misrepresentations.

There is no evidence upon which a finding of incompetency or

unsoundness of mind of Ridenour can be based. The many transactions in which he took part indicate strongly the reverse of such a condition. There is testimony from many lay witnesses, including the family and brothers of Ridenour, that he was of unsound mind from about the year 1914 until he was committed to the insane asylum, but none of these witnesses testified to facts upon which such opinions could be based, and such testimony is of little or no value, and much of it would undoubtedly not have been permitted to go into the record had the case not been tried in equity. There is also the testimony of a physician as an expert witness, who answered upon a hypothetical question, that in his opinion Ridenour had been of unsound mind since about the year 1914, but this testimony is not sufficient, in view of the proven facts, circumstances, and conditions, upon which to base a finding of incompetency. The further fact should be noted that, during the period it is claimed he was insane, Ridenour was conducting successfully business transactions of large magnitude; that his competency during the time of such transactions was not questioned. If he was insane, none of the defendants and no one else knew it. He was appointed as administrator of his father's estate in 1907, and acted as such until 1925, when his final report was approved and he was discharged. In 1919, he was accepted, after medical examinations, as an insurance risk in life policies aggregating large amounts. In 1920, he was appointed and acted as road patrolman. In fact until near the time that he was adjudged to be insane there is no evidence that he acted other than as an ordinary, astute, careful, business man. Without further extending this opinion, we conclude from a careful reading and study of the record that the district court was right in its finding that the equities were with the defendants, and its order in dismissing plaintiff's petition should not be disturbed. An affirmance necessarily follows.—Affirmed.

CLAUSSEN, C. J., and STEVENS, KINDIG, MITCHELL, ALBERT, and EVANS, JJ., concur.